WILLIAM H. PEARSON vs. INHABITANTS OF HAMLIN'S GRANT PLANTATION.

*Equalization statute—construction of.*

None of 'the soldiers who enlisted or were drafted and went any time during the war'* are entitled to any of the surplus reimbursed by the State, above the amount paid out by the town in which they resided, unless they represented their town in the army.

ON REPORT.

ASSUMPSIT to recover one-sixth of $517, being the surplus received by the defendant plantation from the State, under Pub. Laws of 1868, c. 225, and by vote appropriated 'to the soldiers who enlisted or were drafted and went any time during the war, or, if deceased, to their legal representatives,' as provided by § 6.

It appeared that of the six persons residing in the plantation who served in the war, four served on the quota of the defendants, and two, one of whom was the plaintiff, served before the call of July, 1862, during their term of service and were honorably discharged. but not on the credit of the defendant plantation. It also appeared that the plaintiff subsequently re-enlisted and served on the quota of another town.

The only question in issue was, the plaintiff claimed that he was entitled to one-sixth of the surplus received from the State by the defendants, and the defendants contended that the four soldiers only who served on their quota were entitled to the surplus.

---

*Pub. Laws of 1868, c. 225, § 6. 'No towns or plantations which furnished their quotas as aforesaid without the payment of any bounty or by the payment of a less aggregate bounty than the sum reimbursable under this act, shall be entitled to receive the certificate provided by § 3, until they shall have furnished the commission with a certified copy of a vote of such towns or plantations appropriating the sum to which they would be entitled or the surplus of the same above the amount actually paid out, to the soldiers who enlisted or were drafted and went any time during the war, or, if deceased, to their legal representatives.'

*E. Foster, jr.*, for the plaintiff.

*D. Hammons*, for the defendants.

DANFORTH, J.   The plaintiff in this case has mistaken his remedy.   The surplus found in the hands of the defendants, part of which he claims, is money paid to them in trust, 'to be appropriated to the soldiers who enlisted or were drafted and went any time during the war, or, if deceased, to their legal representatives.' Amendments of the Constitution, Art. II.; Acts of 1868, c. 225, § 6.

The case finds that there are at least four other persons who are interested and entitled to a share in this same fund, and whose term of service was longer than plaintiff's.   There is nothing in the constitution or law referred to, requiring the appropriation to be in equal parts; but on the other hand, the fair inference is that it is to be in proportion to the term of service, having regard to the amount previously received.

But it does not appear that the plaintiff is entitled to any part of the fund.   The language in section 6 of the act relied upon, 'the soldiers who enlisted or were drafted and went at any time during the war,' taken alone is sufficiently broad to cover the plaintiff's claim.   It is, however, very evident that the words used cannot be taken in this general sense, for if so, it would include all at least who went from the State.

There must then be some limit to its meaning and for that limit we must look to the act itself.   The object of the act was to reimburse towns in part for expenses incurred in furnishing soldiers. It provides for the payment of a certain sum for each soldier furnished.   Previous to the sentence referred to no soldiers are spoken of except such as are furnished by the several towns.

The words 'the soldiers' in the sentence in question must necessarily refer to those before spoken of.   This construction gives a clear and consistent meaning to the act.   It authorizes payment to the towns for soldiers furnished under and subsequent to the call of

Pearson *v.* Inhabitants of Hamlin's Grant Plantation.

July 2, 1862, and requires towns to pay over any surplus received to such soldiers as they may have furnished, whether before or after that call, but gives no rights and imposes no obligations in relation to any soldiers not furnished by them respectively.

The only ground upon which the plaintiff rests his claims is his citizenship. But this is not sufficient. He must also be a soldier of the defendant plantation, and this can only be by draft or contract. The plaintiff was not drafted, nor so far as appears was there any contract between him and the defendants. There was no action on their part in procuring his enlistment, no assent on his part to serve on their behalf. After the act of Congress of 1863, c. 75, he might still, by the consent or agreement of the parties, have been credited to and thus, as held in *Wayland* v. *Ware*, 104 Mass. 50, have become a soldier and virtually have served on the quota of the plantation of which he was a resident. But the case finds that he did not serve on any quota of that plantation, nor does it appear that he was, or consented to be, credited to it. As a soldier no relationship existed between the plaintiff and defendants. He was indeed a citizen of the plantation, but did not represent it in the army. The plaintiff himself is an illustration of these principles. After his re-enlistment he was still a resident of Hamlin's Grant, but by his contract, a soldier of Clinton. If Clinton, whose fund from the State the plaintiff helped to increase, had received a surplus, he might with propriety have claimed a share of it. But as he in no way added to the defendant's surplus, or in any sense represented them as a soldier, we see no ground upon which he is entitled to recover. *Plaintiff nonsuit.*

APPLETON, C. J.; CUTTING, WALTON, and DICKERSON, JJ., concurred.